## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATHAN BRINING,<br><br>                    Plaintiff,<br><br>       v.<br><br><br>SOUTH JERSEY INDUSTRIES, INC.,<br>JOSEPH M. RIGBY, SARAH M.<br>BARPOULIS, VICTOR A.<br>FORTKIEWICZ, SHEILA HARTNETT-<br>DEVLIN, G. EDISON HOLLAND,<br>SUNITA HOLZER, KEVIN O'DOWD,<br>CHRISTOPHER PALADINO,<br>MICHAEL J. RENNA, AND FRANK L.<br>SIMS,<br><br>                    Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS<br>OF THE FEDERAL SECURITIES<br>LAWS**<br><br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Nathan Bringing ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by South Jersey Industries, Inc. ("SJI" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and

postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning SJI and the Defendants.

SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against SJI and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed transaction (the "Proposed Transaction") between the Company and affiliates of Infrastructure Investments Fund ("IIF").

2.      On February 23, 2022, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with NJ Boardwalk Holdings LLC ("Parent") and Boardwalk Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Parent.  Pursuant to the terms of the Merger Agreement, Merger Sub will merge with and into SJI, with SJI surviving the merger as a wholly owned subsidiary of Parent. As a consequence of the merger, the Company's shareholders will receive $36.00 in cash for each share of SJI common stock they own (the "Merger Consideration").

3.      On April 11, 2022, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against SJI and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to SJI

shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, the owner of SJI shares.

9.      Defendant SJI is incorporated under the laws of New Jersey and has its principal executive offices located at 1 South Jersey Plaza, Folsom, New Jersey 08037.  The Company's common stock trades on the New York Stock Exchange under the symbol "SJI."

10.      Defendant Joseph M. Rigby ("Rigby") is and has been the Chairman of the Board of SJI at all times during the relevant time period.

11.     Defendant Sarah M. Barpoulis ("Barpulis") is and has been a SJI director at all times during the relevant time period.

12.     Defendant Victor A. Fortkiewicz ("Fortkiewicz") is and has been a SJI director at all times during the relevant time period.

13.     Defendant Sheila Hartnett-Devlin ("Harnett-Devlin") is and has been a SJI director at all times during the relevant time period.

14.     Defendant G. Edison Holland ("Holland") is and has been a SJI director at all times during the relevant time period.

15.     Defendant Sunita Holzer ("Holzer") is and has been a SJI director at all times during the relevant time period.

16.     Defendant Kevin O'Dowd ("O'Dowd") is and has been a SJI director at all times during the relevant time period.

17.     Defendant Christopher Paladino ("Paladino") is and has been a SJI director at all times during the relevant period.

18.     Defendant Michael J. Renna ("Renna") is and has been the President, Chief Executive Officer ("CEO"), and a director of SJI at all times during the relevant period.

19.     Defendant Frank L. Sims ("Sims") is and has been a SJI director at all times during the relevant period.

20.     Defendants Rigby, Barpoulis, Fortkiewicz, Hartnett-Devlin, Holland, Holzer, O'Dowd, Oaladino, Renna, and Sims are collectively referred to herein as the "Individual Defendants."

21.     The Individual Defendants, along with Defendant SJI, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

22.     SJI, an energy infrastructure holding company based in Folsom, NJ, delivers energy services to customers through two primary subsidiaries: SJI Utilities (SJIU) and SJI Energy Enterprises (SJIEE). SJIU houses the company's regulated natural gas utility operations, delivering safe, reliable and affordable natural gas to more than 700,000 residential, commercial and industrial customers across New Jersey via its South Jersey Gas and Elizabethtown Gas subsidiaries. SJIEE houses the company's non-utility operations primarily focused on clean energy development and decarbonization via renewable energy production and energy management activities.

### The Company Announces the Proposed Transaction

23.     On February 24, 2022, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> **FOLSOM, NJ, and NEW YORK, February 24, 2022** – South Jersey Industries, Inc. (NYSE: SJI) (SJI) and the Infrastructure Investments Fund (IIF), a private investment vehicle focused on investing in critical infrastructure assets, today announced that they have entered into a definitive agreement under which IIF will purchase SJI for $36.00 per share in cash, reflecting an enterprise value of approximately $8.1 billion.
>
> "As energy markets across the U.S. and New Jersey accelerate the transition toward low carbon and renewable energy, the SJI Board determined that now is the opportune time to join forces with IIF," said Mike Renna, President and CEO, SJI. "IIF is a trusted partner and long-term investor in utility and renewable energy companies, and together we will be well positioned to execute on SJI's clean energy and decarbonization initiatives in support of the environmental goals of our State and region. In addition, as a private company and with IIF's support, we will have additional resources to continue to modernize our critical infrastructure, maintain our high standard of customer service at reasonable rates, and further enhance the safety, reliability and sustainability of our businesses."
>
> Mr. Renna continued, "This transaction is a testament to the achievements of our employees, and we are pleased that IIF recognizes the strength of our workforce

and culture and shares our commitment to supporting the communities we serve. I would like to thank each of our employees for all they do each day to contribute to the success of SJI. I look forward to building on our strong foundation together."

IIF's long-term approach to investing in utility and infrastructure assets is directly aligned with SJI's mission to "build a better today and tomorrow" for the more than 700,000 families and businesses SJI serves, while continuing to support its 1,100-employee workforce and the communities in which SJI operates. SJI and IIF will work together to advance SJI's sustainability goals while SJI continues to provide excellent customer service, maintains an outstanding team and culture, and delivers on its commitment to improving the quality of life for all those who live and work in the communities it serves.

Andrew Gilbert, Investment Principal to IIF, said, "SJI has established itself as a leader among its peers, distinguished by the strength of its utilities and ability to provide quality service to its customers. SJI's long track record of investing in sustainability and clean energy initiatives has translated into a clear competitive advantage. We believe our expertise, resources and experience can help SJI further build on its leading position in the industry. We have great respect for SJI's talented team and look forward to partnering with them to safely provide clean and reliable energy to the communities of New Jersey."

**Leadership and Headquarters**

Following the close of the transaction, SJI will remain locally managed and operated with headquarters in Folsom, New Jersey. Mike Renna will continue as Chief Executive Officer and the current management team will continue to lead SJI.

**Terms of the Transaction**

The per share purchase price of $36.00 represents a 46.3% premium to SJI's 30-day VWAP as of February 23, 2022, the last trading day prior to the announcement of the agreement. The transaction was unanimously approved by SJI's Board of Directors and is expected to close in the fourth quarter of 2022, subject to the approval of SJI's shareholders, the receipt of regulatory approvals, including by the New Jersey Board of Public Utilities, and other customary closing conditions. Dividends payable to SJI shareholders are expected to continue in the ordinary course until the closing, subject to approval by SJI's Board of Directors. Upon completion of the transaction, SJI's shares will no longer trade on the New York Stock Exchange, and SJI will become a private company.

*       *       *

**Advisors**

BofA Securities is acting as exclusive financial advisor and Gibson, Dunn & Crutcher LLP is acting as legal advisor to SJI. Centerview Partners is acting as exclusive financial advisor and Skadden, Arps, Slate, Meagher & Flom LLP is acting as legal advisor to IIF. In addition, IIF has a committed bridge financing facility in place led by KeyBanc Capital Markets and PNC Capital Markets to support the transaction.

**FALSE AND MISLEADING STATEMENTS**

**AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT**

24.     On April 11, 2022, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

25.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding the Company's Financial Projections**

26.     The Proxy Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

27.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such

projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

28.     In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

29.     Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBIT; (ii) Adjusted EBITDA; and (iii) Unlevered Free Cash Flow.

30.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.  Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Sales Process**

31.     The Proxy Statement contains information concerning the background of the Proposed Transaction, but fails to disclose material information concerning such.

32.     First, the Proxy Statement fails to disclose sufficient information concerning the number and nature of all confidentiality agreements entered into between the Company and any interested third party during the sales process, as well as whether any agreement contained "don't-ask, don't waive" or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid.

33.     The Proxy Statement fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction which must be disclosed to stockholders.

34.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding BofA's Financial Opinion**

35.     The Proxy Statement contains the financial analyses and opinion of BofA Securities, Inc. ("BofA") concerning the Proposed Transaction, but fails to provide material information concerning such.

36.     With respect to BofA's *Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose the individual financial metrics for each of the companies observed in the analysis, including equity market value, net income, enterprise value and EBITDA.

37.     With respect to BofA *Selected Transactions Analysis*, the Proxy Statement fails to disclose the individual financial metrics for each of the transactions observed in the analysis.

38.     With respect to BofA's *Discounted Cash Flow Analysis - WholeCo*, the Proxy Statement fails to disclose: (i) the Company's implied terminal enterprise values; (ii) the line items used to by BofA to calculate the Company's projected unlevered free cash flows; (iii) the inputs and assumptions underlying BofA's use of P.E. multiples ranging from 15.5x to 17.5x; (iv) the inputs and assumptions underlying BofA's use of discount rates ranging from 4.50% to 5.50%; and (v) the estimated marginal tax rate provided to BofA.

39.     With respect to BofA's *Discounted Cash Flow Analysis – Utility Segment*, the Proxy Statement fails to disclose: (i) the Company's Utility Segment implied terminal enterprise values; (ii) the line items used to by BofA to calculate the Company's projected unlevered free cash flows; (iii) the inputs and assumptions underlying BofA's use of P.E. multiples ranging from 18.0x to 20.0x; and (iv) the inputs and assumptions underlying BofA's use of discount rates ranging from 4.25% to 5.25%.

40.     With respect to BofA's *Discounted Cash Flow Analysis – Non-Utility Segment*, the Proxy Statement fails to disclose: (i) the Company's Non-Utility Segment implied terminal enterprise values; (ii) the line items used to by BofA to calculate the Company's projected unlevered free cash flows; (iii) the inputs and assumptions underlying BofA's use of EBITDA multiples ranging from 9.5x to 13.0x; and (iv) the inputs and assumptions underlying BofA's use of discount rates ranging from 8.5% to 10.5%.

41.     With respect to BofA's *Wall Street Analysts Price Targets* analysis, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the premiums paid.

42.     When a banker's endorsement of the fairness of a transaction is touted to

shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

43.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a)
### of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

46.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not

contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

47.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

48.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

49.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

50.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the

Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

51.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

52.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

53.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

54.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55.     The Individual Defendants acted as controlling persons of SJI within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of SJI, and participation in and/or awareness of the Company's operations and/or

intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

56.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

58.     In addition, as set forth in the Proxy Statement at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

59.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60.     As set forth above, the Individual Defendants had the ability to exercise control

over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

61.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.     Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 26, 2022                                  Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz

Email: jml@jlclasslaw.com
**LIFSHITZ LAW PLLC**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*